H. and T. M. WHITE, plaintiffs in error, *vs.* A. H. LEE, defendant in error.

1. New trial does not necessarily follow from a verdict being contrary to the charge of the Court.

2. A contract, made in 1864, to deliver cotton, in consideration of so much Confederate money, is within the Ordinance of 1865, for adjusting Confederate contracts; and in adjusting the equities between the parties in such a case, the jury are not confined to the *specie* value of the consideration at any time, nor to the specie value of the cotton, at the time it was to be delivered; they may, under the Ordinance, consider the value of the consideration, and of the cotton at any time, and find what, under all the circumstances of the case, is a true, equitable adjustment of the rights of the parties therein; and it is error in the Court to confine the jury to the *specie* value of either the consideration, or the cotton, at any time.

3. When, in consideration of $5,000 00, A contracted, in February, 1864, to deliver to B, by the 25th of December, 1864, six thousand five hundred and seventy-eight pounds of cotton; and it was in proof that before the action was brought, cotton was worth from eighteen to forty cents per pound, United States currency, and the jury found $1,151 00, for the plaintiff: *Held*, that it was error in the Court below to grant a new trial.

Scaling Ordinance. Charge of Court. Before Judge GREEN. Newton Superior Court. September Term, 1869.

H. and T. M. White sued Lee upon a paper as follows:

"Received of H. and T. M. White $5,000 00, for which I am to deliver them cotton, at seventy-six cents per pound, amounting to six thousand five hundred and seventy-eight pounds, the cotton to be baled by me in cotton bagging and cotton rope, said cotton to be delivered on or before the 25th of December next. February 24th, 1864.

AUGUSTUS H. LEE."

The defense was that the amount should be scaled, under the Ordinance of 1865. After the paper was read in evidence, HUGH WHITE testified, that, at the date of the contract, Confederate money was worth, in gold, twenty for one; that afterwards, in the summer of 1864, Lee said he was ready to begin ginning and delivering the cotton, and witness replied, "all right;" that at that time there was much apprehension that cotton would be destroyed by Federal

White *vs.* Lee.

raiders; that the cotton was not delivered; that in the fall of 1865, Lee asked him if they would insist upon all the cotton; he asked Lee how much he was willing to deliver? and upon his replying that he would deliver two-thirds of it by Christmas, witness agreed to accept it as in full; he did not deliver, and witness speaking of suing him, Lee replied, that he would keep him out of every dollar he could; cotton in the latter part of 1865 was worth forty cents per pound, United States currency. Plaintiff showed that cotton was worth $1 00 per pound, in the summer of 1864, in Confederate currency, and went down to sixty cents, during that year, there being much apprehension of raids; and in December, 1864, Confederate money went down to thirty-five for one of gold; that after the war, during 1865, cotton brought about eighteen cents in gold, or forty-two cents in greenbacks.

LEE, for himself, testified that the paper was given for $5,000 00 of Confederate currency, borrowed to pay for some land in Alabama, but the party refused to accept it, and the money perished on his hands; that when he talked with Hugh White, (November, 1864,) he wished to deliver the cotton, but White said he was afraid of raiders, and told him to keep the cotton till called for; cotton was then of little value, because of said danger; it was not ginned till the fall of 1865; Lee sold it, after the war, for from thirty-three to thirty-eight cents per pound, and never offered the money to plaintiffs. Hugh White, re-introduced, denied positively having refused to receive the cotton, in 1864, or at any other time.

Defendant's counsel then moved to rule out the evidence as to the value of cotton, after the maturity of the paper, but the Court would not do so. After repeating to the jury the Ordinance of 1865, the Judge charged them, that if it were a Confederate contract, it should receive an equitable construction and was subject to be scaled, according to the gold or intrinsic value of the Confederate money, at the time of the loan, or at the maturity of the paper, with interest from that maturity, or that they could find the value of the cotton at seventy-six cents per pound, and then ascertain the gold value

thereof, according to the evidence submitted, etc.   The jury found for the plaintiffs $1,151 15, with interest from the 1st of December, 1865, and costs.

Defendant's counsel moved for a new trial, upon the grounds that the Court erred in not ruling out said evidence, as to the value of cotton, after the maturity of the paper, and because the verdict was contrary to law, to evidence and the charge of the Court.   The new trial was granted, and that is assigned as error.

J. J. FLOYD, for plaintiffs in error.

D. F. HAMMOND, for defendant, cited 9th Ga. R., 408 ; 10th, 389 ; 21st, 384 ; 36th, 552 ; Irwin's Code, section 2732.

MCCAY, J.

1. We think the Court erred in granting a new trial in this case.   Perhaps it is true that the jury found contrary to the charge, but it does not necessarily follow, that, for this reason, the verdict ought to be set aside.   -

2. We think the Court erred in the charge.   This was not a promissory note.   It was an agreement, in consideration of $5,000 00, to deliver to the plaintiff, by a certain fixed date, six thousand five hundred and seventy-eight pounds of cotton, and the action is for a breach of that contract.   Ordinarily, the measure of damages, in such cases, is not the value of the cotton, at the time it was to be delivered, as is the case in promisory notes, payable in specifics, but the loss which has accrued to the plaintiff, by the breach of the contract, and a jury, in estimating such damages may take into consideration the value of the property, at any time, before suit is brought, especially as the money was here paid in advance.   But this is a Confederate contract, and has for its consideration Confederate money, and falls, therefore, under the Ordinance of 1865.   And, in considering the damages, the jury have a right, under that Ordinance, to consider the value of the consideration, at the date of the contract, at the

maturity of the contract, and at any time, and the value of the cotton at any time, and to find a verdict according to the equities of the case.   Under this rule, we think, the verdict, though not entirely satisfactorily, may be supported.   As was remarked by Judge Walker, in *Cherry vs. Walker*, 36th *Georgia Reports*, 329, "the jury, in these cases has more than ordinary discretion."   Very few contracts, made during the late war can be reduced to any certain rule ; men so universally acted under a delusion, that each case must stand pretty much on its own circumstances.

3. Considering that, under the strict rules of law, the plaintiff, in this case, was entitled to have the value of the cotton, at any time before suit is brought, and that it is only under the Ordinance that this hard measure of damages is taken off from the defendant, we think he ought to be satisfied, under all the facts of the case, with the verdict.

Judgment reversed.