**MAGGARD TRUCK LINE, INC., Plaintiff,**

v.

**DEATON, INC. and Protective Insurance Company, Defendants.**

**Civ. A. No. C82–779A.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 21, 1983.

---

Thomas S. Carlock and Diane Q. House, Dennis, Corry, Webb, Carlock & Williams, Atlanta, Ga., for plaintiff.

Dan B. Wingate and Ben L. Weinberg, Jr., Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendants.

## ORDER

### ROBERT H. HALL, District Judge.

This case stems from the destruction by fire of 80 bales of cotton while en route from Texas to North Carolina. The case is now before this court on plaintiff's, Maggard Truck Line, Inc. (Maggard), motion in limine and request for pretrial rulings. Jurisdiction is pursuant to 28 U.S.C. § 1332. For the reasons stated hereinafter plaintiff's motion is GRANTED in part, DENIED in part.

### FACTS

On August 13, 1980, L.T. Barringer & Co. (Barringer) consigned 80 bales of cotton to Maggard. The cotton was to be shipped from Harlinger, Texas to Kannapolis, North Carolina. Maggard, acting as a broker for transportation, entered into an agreement with Deaton, Inc. (Deaton), under which Deaton would transport the cotton to North Carolina. On August 14, 1980, while in the sole possession of Deaton, the entire load of cotton was destroyed by fire. Maggard contends that Deaton received the cotton in good condition and that Deaton's negligence was the sole cause of the loss.

Barringer was initially compensated for its loss by its own insurance carrier. Barringer's insurance carrier then made a claim against Maggard and was paid by Maggard's insurance carrier. Maggard now seeks reimbursement from Deaton for the money Maggard and its insurance carrier paid Barringer.[1]

Further facts will be disclosed as necessary for the discussion of this motion.

### DISCUSSION

In this motion in limine and request for pretrial rulings plaintiff asks the court to rule as follows:

(1) that the defendants are precluded from tendering in evidence or from introducing or injecting by way of testimony, argument or otherwise matters relating to the insurance coverage provided to Maggard for the loss of the shipment;

(2) that the construction of the terms of the bill of lading at issue is a question of law and should be decided by the court; and

(3) that the defendants carry the burden of proof once plaintiff has established its prima facie case.

Defendants oppose each of these requests.

The plaintiff's requests will be discussed by the Court in the order listed above.

### I. *Evidence of Insurance*

Plaintiff contends "that the fact of insurance is not an issue in a damage action such as this." (Plaintiff's Motion in Limine and Request for Pre-Trial Rulings, p. 3). It is plaintiff's belief that the evidence that the claim against plaintiff was paid by plaintiff's insurance company should be excluded because it is irrelevant and prejudicial. Defendants, on the other hand, contend that the evidence of plaintiff's insurance coverage should be allowed to be introduced because it is relevant to three issues in the case. These three issues are:

1) Defendants' contention that plaintiff or plaintiff's shipper "assumed the risk" of any loss to the cargo by purchasing its own insurance and thereby paying a lower freight rate;

2) Defendants' contention that § 2(c) of the Bill of Lading (relating to insurance coverage) applies to defendants and, therefore, precludes any liability on the part of defendants; and

---

1. Maggard's insurance carrier paid the entire claim except for $1,000 which Maggard paid as its deductible. Because Maggard did pay this $1,000 there has only been a partial subrogation and Maggard is entitled to bring suit in its name. *Maggard Truck Lines v. Deaton, Inc.,* No. C82–779A (N.D.Ga. filed June 13, 1983).

3) Defendants' contention that Tex.Stat. Ann. tit. 25, art. 905 applies to this case and that this statute gives defendants the benefit of plaintiff's cargo insurance.

These three contentions will be discussed separately.

### 1. "Assumption of Risk"

In support of its first argument defendant Deaton asserts that the rates it charges for shipping goods reflect the understanding that the shipper's [in this case, Maggard's] insurance covers the goods being transported. In this regard Deaton tenders the testimony of Mr. Lloyd Wallace, Assistant Safety Director for Deaton: "It is the general policy and understanding of Deaton, and Deaton's quoted rates reflect, that the broker placing the shipment provides cargo insurance or coverage and the parties look to that coverage to cover whatever risk of loss there might be on the cargo." Defendants' theory, in essence, is that by paying a lower freight rate Maggard assumed the responsibility of insuring the shipment, "thus releasing defendants from liability." (Defendants' Response to Plaintiff's Motion, p. 3)

Maggard specifically disputes this "understanding." Maggard's President, Harry Maggard stated in his deposition that although Maggard does carry insurance on all cargo, the company has not, in the last three years, paid a rate differential to a trucker based on whether s/he provided insurance on the cargo. Plaintiff contends that it carries its own insurance so that its customers can immediately be paid for any loss without having to seek payment from the actual carrier. Plaintiff argues that the fact that it carries insurance does not mean that it intends to release the actual carrier from liability.

Any discussion of the introduction of insurance must begin with the proposition that evidence of insurance is generally inadmissible because it is so highly prejudicial. This type of evidence is especially harmful when used against a plaintiff since it suggests that s/he has been or will be compensated, and that s/he is either seeking double recovery or that the real party in interest is the subrogated insuror. However, evidence of insurance may be introduced if it relates to a real issue in the case and is not introduced merely to try to convince the jury that no "real harm" has been suffered.

The questions before the court, then, are twofold—is the "assumption of risk" argument really an issue in this case and, if so, does the evidence of insurance relate to this, or any other issue. As to the first question, this court has already held that whether there was actually such a risk-shifting agreement is a question for the jury.[2] *Maggard Truck Line, Inc. v. Deaton*, C82–779A (N.D.Ga. filed June 13, 1983).

The second question concerns the relevance of plaintiff's insurance to this risk-shifting argument or to any other issue in the case. Plaintiff contends that the existence of insurance is irrelevant to the question of who caused the loss. This is true but causation is not the only issue in this case. If the jury determines that Deaton did in fact cause the loss there still remains the question of Deaton's liability. If the parties did in fact agree that Maggard would, in essence, insure Deaton, then Deaton is not liable. In this regard Deaton argues that the "mere existence of insurance on the shipment is consistent with and illustrative of Deaton's intent to place the risk of loss on an insurance carrier." (Defendants' Response to plaintiff's motion, p. 5).

---

**2.** Plaintiff also points out that the Interstate Commerce Commission requires a common carrier to file with it a bond or insurance policy sufficient to cover the carrier for property loss or damage. 49 U.S.C. § 10927. Plaintiff argues that because defendants are required to have this coverage they cannot hold plaintiff totally responsible for insurance. This is not necessarily true. As the statute states this requirement is to make sure carriers have sufficient coverage for any *liability* due to property loss or damage. If there is an agreement between a shipper and carrier that the shippers insurance will cover any loss then the carrier will not incur liability.

■ This court agrees with plaintiff that the fact that plaintiff carries insurance on all loads does not automatically shift the risk of loss to the plaintiff. However, whether there was an agreement to release Deaton from liability is a question for the jury. The existence of insurance does have some relevance to the risk-shifting argument. Moreover, if the jury determines that the parties did agree to shift the risk then the existence of plaintiff's insurance and the amount plaintiff received under the policy are of central importance. For these reasons plaintiff's motion in limine to exclude any evidence of insurance is DENIED.

Because the insurance question is resolved on this ground this court need not consider defendants' other two bases for introducing the insurance.

## II. *The Bill of Lading*

Concerning the bill of lading, there are two issues this court must resolve. Number 1, should this court construe the bill of lading or is it a subject for jury determination. Number 2, if this court should construe the bill of lading, what are the terms of that document.

### 1. Court Construction

■ Basically a bill of lading operates both as a receipt and as a contract. *Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924). As a contract it is subject to the general rules of construction which govern other contracts. *Texas & P.R. Co. v. Reiss*, 183 U.S. 621, 22 S.Ct. 253, 46 L.Ed. 358 (1902).

■ Under Georgia law[3] a question of contract interpretation is a question of law for the court. "The construction of a contract is a question of law for the court. Code § 20-701 [now O.C.G.A. § 13-2-1]." *Gilreath v. Argo*, 135 Ga.App. 849, 219 S.E.2d 461 (1975). Only where a contractual provision is ambiguous does the interpretation thereof become a jury question.

*Sim's Crane Service v. Reliance Insurance Co.*, 514 F.Supp. 1033 (S.D.Ga.1981). Defendants in the instant case argue that the construction of this bill of lading should be left to the jury because there is a "disagreement between the parties as to the intended effect of the contract." (Defendants' Response to Plaintiff's Motion, pp. 7–8). Defendants make this assertion because defendants contend that defendant Deaton is a party to the contract. As discussed infra, this court does not agree that defendant Deaton is a party to the bill of lading. The parties are Maggard (broker) and Barringer (owner) and there appears to be no disagreement between these two parties that would preclude construction by the court.

### 2. The Terms

Two provisions of the bill of lading are at issue here. The first provision, § 2(b) provides:

As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine (9) months after delivery of the property ... or, in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed ... where claims are not filed, no carrier hereunder shall be liable, and such claims will not be paid.

Defendant Deaton contends that plaintiff's claims are barred because plaintiff failed to provide written notice to Deaton within the nine month period.

The second provision, § 2(c) provides:

Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property, so far as this shall not avoid the policies or contracts of insurance; Provided, that

---

**3.** In deciding whether to construe a contract we look to the law of the forum state—Georgia.

the carrier reimburse the claimant for the premium paid thereon.

Defendant Deaton argues that it is entitled to coverage under any insurance Maggard carried on the goods pursuant to this provision.

■ The bill of lading involved in this case is one which Maggard issued to Barringer upon Maggard's receipt of the cotton. This bill of lading lists Barringer as the shipper/consignee and Maggard as the carrier. As a contract it operates to bind these two parties. This court dismisses as without merit Deaton's contention that the bill of lading also constitutes a contract between Maggard and Deaton. Deaton was not a party to this bill of lading and cannot claim as such to be subject to, or to benefit from, the contractual provisions.[4] *See Boston R.R. Company v. Hooker,* 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914).

Because this court believes that the bill of lading only regulates the rights/liability of the contracting parties (Maggard and Barringer) this court refuses to hold that Maggard's claim is barred because it failed to notify Deaton in writing of its claim within nine months; § 2(b) of the bill of lading is simply not applicable to Deaton.

■ Section 2(c) of the bill of lading presents a harder question. Again, this court does not find that Deaton has any rights due to status as a party—it is not one. However, § 2(c) states that *"any* carrier ... shall have the full benefit of *any* insurance ...."* This court believes that it was probably not the intention of either Maggard or Barringer to cover Deaton, but that instead this provision was to give the carrier liable under the bill of lading (Maggard) the benefit of any insurance that the claimant under the bill of lading (Barringer) carried. The provision is, however, very broadly worded and by its terms seems to include Deaton (as *"any* carrier"). Despite this fact this court believes that Deaton is not entitled to the benefit of

Maggard's insurance. Section 2(c), in addition to the above-quoted language, provides that the provision applies only insofar as "this shall not avoid the policies or contracts of insurance." From the evidence before this court it appears that Maggard is the only insured party under the policy it carries. Maggard's policy does insure Maggard's interest while another carrier has the goods (Deposition of Harry Maggard) but this is not equivalent to having Maggard's policy insure the other carriers. It appears to this court, therefore, that an attempt by Maggard to provide coverage for Deaton would void the policy. For this reason this court holds that defendant Deaton is not entitled to the benefits of Maggard's insurance policy pursuant to § 2(c) of the bill of lading.

## III.  *The Burden of Proof*

The parties are in disagreement as to the allocation of the burden of proof in this case. Plaintiff contends that once a prima facie case has been established the burden of proof shifts to the defendants and remains there. Defendants disagree that the burden of proof remains with them.

■ The parties and this court are all in agreement that the initial burden rests on the plaintiff. Plaintiff must establish a prima facie case. This is done by proving, by a preponderance of the evidence: (1) that s/he delivered the goods to the defendant carrier in good condition; (2) that the goods on arrival were either damaged or destroyed; and (3) the amount of damage. *Missouri Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964).

■ Once plaintiff has established these three facts s/he has established a prima facie case of negligence. The burden of proof now shifts to the defendant. The defendant carrier, although not an absolute insurer, is liable for damage to

---

**4.** We also summarily dismiss defendants' contention that Tex.Stat.Ann. tit. 25, art. 905 makes the bill of lading applicable to defendant Deaton. We encourage defendant to familiarize

itself with the case of *Strickland Transp. Co. v. Wagner,* 374 S.W.2d 251 (Tex.Civ.App.1963), in which this statute was expressly held to be inapplicable to interstate commerce.

goods it transports unless it can show that the damage was caused by one of five exceptions: (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Missouri Pac. R.R.*, 377 U.S. at 137, 84 S.Ct. at 1144 (citations omitted).

In addition to proving that the damage was due to an excepted cause, defendant must prove (i.e., defendant carries the burden of proof) that s/he was free from negligence. Herein lies the dispute between the parties in this case. Defendant contends that it should not carry the burden of proof on the issue of negligence. This court disagrees.

In *Missouri Pac. R.R., supra,* the United States Supreme Court made the following statement:

> (U)nder federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the *burden of proof* is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Id.* at 138, 84 S.Ct. at 1145 (emphasis added). Defendant contends that by "burden of proof" the Supreme Court actually meant "burden of production" on the issue of non-negligence. This court is not unaware that the term "burden of proof" is often used when what is actually meant is "burden of production," or the burden of going forward with evidence. It is not at all clear, however, that the Supreme Court was using the term "burden of proof" in anything but its strictest sense. If this court adopted defendant's interpretation we would have to hold that the Supreme Court meant, by using the one term "burden of proof" that the carrier has the burden of *proof* as to the excepted cause (no one has disputed the fact that the carrier does have the burden of proof on this issue) but only the burden of *production* as

to the issue of non-negligence. This court sees no reason to conclude that the Supreme Court, had it meant two different standards, would not have said so.

In making their argument defendants point to a long line of cases, including United States Supreme Court cases, which have held that after the carrier proves that the damage was due to an excepted cause, the burden of proof shifts to the plaintiff to prove that the cause would not have resulted in the damage but for the carrier's negligence. *E.g., Schnell et al. v. The Vallescura,* 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373 (1934) and cases cited therein. Although this court is aware of these contrary views we feel compelled to follow the latest Supreme Court pronouncement. See *Super Service Motor Freight Co. v. United States,* 350 F.2d 541 (1965).

In summary, we hold that the burden of proof is as follows: plaintiff must prove a prima facie case by proving delivery in good condition, damage/destruction on arrival and the amount of damage. At this point the burden of proof (in its literal sense) is on defendants to prove, by a preponderance of the evidence *both* that defendants are free from negligence and that the damage was due to one of the excepted causes. Plaintiff's motion for a pre-trial ruling to this effect is, therefore, GRANTED.

In summary, this court:

(1) DENIES plaintiff's motion in limine to exclude the introduction of any evidence of insurance;

(2) GRANTS plaintiff's motion for a pre-trial ruling as to the construction of the bill of lading; and

(3) GRANTS plaintiff's motion for a pre-trial ruling as to the allocation of the burden of proof.

So ORDERED this 21 day of October, 1983.